951 So.2d 223 (2006)
James J. LIRETTE, Jr.
v.
PATTERSON SERVICES, INC. and Liberty Mutual.
No. 2005 CA 2654.
Court of Appeal of Louisiana, First Circuit.
November 17, 2006.
*225 Stephen S. Stipelcovich, Houma, for Plaintiff/Appellant, James J. Lirette, Jr.
Kenneth Krobert, Baton Rouge, for Defendant/Appellee, Patterson Services, Inc and Liberty Mutual.
(Court composed of Judge JAMES F. MCKAY, III, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, Jr., serving as judges ad hoc by special appointment of the Louisiana Supreme Court).
TERRI F. LOVE, Judge, Ad Hoc.
This appeal arises from a workers' compensation claim. James Lirette injured his hand when he caught his fingers between a forklift and a bolt. Prior to his injury, James Lirette and Jack Leathers were involved in a verbal altercation. The Workers' Compensation Judge found for James Lirette. Patterson Services, Inc. and Liberty Mutual Insurance Company appealed asserting numerous errors. We find that the Workers' Compensation Judge did not err and affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
On July 2, 2004, James Lirette, Jr. ("Mr.Lirette") and Roy Billiot ("Mr.Billiot") were standing outside a door when Jack Leathers ("Mr.Leathers") walked through the door after using the restroom. Mr. Billiot stated "something stink around here." Mr. Lirette responded, "that's Mr. Skidmark right there." Mr. Leathers then approached Mr. Lirette and they proceeded to get involved in a verbal altercation. Both parties allegedly stated, "bring it on" repeatedly. Mr. Leathers walked away and Mr. Lirette allegedly threatened to kill him with the bolt. Several witnesses testified and Mr. Lirette admitted that he and Mr. Leathers did not like each other because Mr. Leathers attained employment instead of Mr. Lirette's son.
Mr. Lirette proceeded back to his job of loosening the nuts from the bolts by tapping it on the forklift, but he remained angry. Mr. Lirette hit the bolt on the forklift hard and "got pinched between the bolt and the iron on the forklift." As a result, Mr. Lirette had his right index finger amputated and he required "surgical repair of his middle finger." He missed three months of work and received medical treatment.
Mr. Lirette filed a 1008 form on July 26, 2004, seeking workers' compensation benefits. The Workers' Compensation Judge ("WCJ") found in favor of Mr. Lirette by holding that the accident occurred in the course or and arising out of Mr. Lirette's employment with Patterson Services, Inc. ("Patterson") and that Mr. Lirette did not violate La. R.S. 23:1208. As to Patterson, the WCJ held that it "did not prevail on its defenses urged under La. R.S. 23:1081" or *226 exceptions based on La. R.S. 23:1031. The WCJ held that Mr. Lirette was entitled to $347.50 a week from July 3, 2004 to October 25, 2004, and that he was also entitled to "all reasonable and necessary medical treatment." As to past medical treatment, the WCJ ordered Patterson to pay $14,807.17, which was the amount of past medical treatment stipulated by both parties. The WCJ ordered that both parties should "determine if claimant incurred any permanent partial disability pursuant to La. R.S. 23:1221" and if so, the defendants must pay "after calculating any credit owed to defendants under La. R.S. 23:1223." Lastly, the WCJ did not assess any penalties or fees against Patterson or Liberty Mutual Insurance Company ("Liberty"), its insurance provider.
Patterson and Liberty, hereinafter referred to as the defendants, appeal asserting that: 1) the provisions of La. R.S. 23:1081 apply when the aggressor in the altercation injures himself; 2) the forfeiture pursuant to La. R.S. 23:1208 applies when a claimant gives false testimony about the occurrence of the injury; and 3) the provisions of La. R.S. 23:1031 bar the compensation of an employee who injures himself.

STANDARD OF REVIEW
Appellate courts review factual findings according to the manifest error or clearly wrong standard. Masinter v. Akal Sec., Inc., 05-1236, p. 3 (La.App. 4 Cir. 6/7/06), 934 So.2d 201, 203. If the factfinder's conclusion was reasonable, even if the record presents two permissible views, the appellate court will not reverse the findings. Id. at p. 3, 934 So.2d at 203-04. The interpretation of statutes pertaining to workers' compensation is a question of law and warrants a de novo review to determine if the ruling was legally correct. Hand v. City of New Orleans, 04-0845, p. 5 (La.App. 4 Cir. 12/22/04), 892 So.2d 609, 612.

INITIAL AGGRESSOR La. R.S. 23:1081
The defendants assert that Mr. Lirette's injury is not covered under the Workers' Compensation Act because they assert that he was the initial aggressor. The WCJ found that the doctrine was inapplicable to the case sub judice. La. R.S. 23:1081 states:
(1) No compensation shall be allowed for an injury caused:
. . .
(c) to the initial physical aggressor in an unprovoked physical altercation, unless excessive force was used in retaliation against the initial aggressor.
The burden of proving that the claimant was the initial physical aggressor rests with the employer. La. R.S. 23:1081(2).
This assignment of error is without merit. This case presents a verbal altercation not a physical altercation, which the statute covers. Additionally, testimony presented to the WCJ demonstrated that Mr. Leathers initiated the verbal altercation when he approached Mr. Lirette and said, "say it again." Mr. Lirette claims that his and Mr. Billiot's statements were made in a joking manner because several employees jokingly commented on Mr. Leather's smell or lack of personal hygiene. Mr. Lirette also stated that he told Mr. Leathers that he was not talking to him, but instead responding to Mr. Billiot. Mr. Leathers walked away from the altercation and neither he nor Mr. Lirette ever exchanged physical strikes. Furthermore, the testimony documents that the verbal altercation had ended prior to Mr. Lirette's injury.
Considering the above, we do not find that the WCJ erred by finding that the *227 initial physical aggressor doctrine did not apply to the facts and circumstances of this case.

FALSE TESTIMONYLa. R.S. 23:1208
Next, the defendants aver that Mr. Lirette forfeited his right to benefits because of his alleged false testimony. La. R.S. 23:1208(A) states:
[i]t shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
The provision applies to "any false statement or misrepresentation, including one involving a prior injury, made willfully by a claimant for the purpose of obtaining benefits." Chauvin v. S. Tech. & Servs., Inc., 02-1871, p. 6 (La.App. 1 Cir. 6/27/03), 858 So.2d 519, 522. The decision that a claimant forfeited "his right to workers' compensation benefits is a question of fact." Id.
The defendants must show that Mr. Lirette's statements were false and that he "willfully and deliberately" made the statements to obtain benefits. Leonard v. James Indus. Constructors, 03-0040, p. 6 (La.App. 1 Cir. 5/14/04), 879 So.2d 724, 729. Willful can be defined as "proceeding from a conscious motion of the will; voluntary; knowingly; deliberate; intending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary." Parfait v. Gulf Island Fabrication, Inc., 97-2104, p. 7 (La.App. 1 Cir. 1/6/99), 733 So.2d 11, 18, citing Grant v. Natchitoches Manor Nursing Home, 96-1546 (La.App. 3 Cir. 5/14/97), 696 So.2d 73, 76. "This burden requires more than a mere showing of inconsistent statements or inadvertent omissions by the claimant." Williams v. Sheridan Constr. Co., 00-1697, p. 6 (La. App. 1 Cir. 9/28/01), 811 So.2d 8, 13.
Mr. Lirette testified that he was talking to Mr. Billiot and not Mr. Leathers. He stated that he did not intend "skid mark" to be a derogatory remark. However, on cross-examination, Mr. Lirette testified that he did say "skid mark" when Mr. Leathers was exiting the restroom and that it "could have been" in reference to the idea that Mr. Leathers had dirty underwear. Mr. Lirette also testified that it was routine to hit the bolt against the forklift to loosen the nut. Mr. Billiot and Shaun Leblanc ("Mr.Leblanc"), two co-workers, corroborated the testimony. Mr. Billiot stated that it was customary to "tap," "pat," or "hit" the bolts. Mr. Leblanc stated that he would tap the bolts. Mr. Lirette stated that he hit the bolt harder than usual after the verbal altercation, but the altercation had ended by that point and this act would not deprive him of workers' compensation benefits.
After reviewing the above testimony, we do not find that the WCJ committed manifest error by holding that Mr. Lirette did not forfeit his benefits due to false testimony. Mr. Lirette admitted that he called Mr. Leathers "skid mark" and that he "could have" meant it in a derogatory manner. Mr. Lirette also stated that workers routinely hit the bolt against the forklift, which was corroborated by his co-workers. Although reasonable minds might differ on their conclusion as to Mr. Lirette's motive behind initially stating that he did not say "skid mark" in a personal hygiene context, the defendants did not prove Mr. Lirette's statements were made to obtain benefits.

BARRED COMPENSATION La. R.S. 23:1031
Lastly, the defendants contend that Mr. Lirette's injury did not arise out of or occur in the course of his employment. Workers' compensation benefits require *228 the claimant's injury to occur "by accident arising out of and in the course of his employment." La. R.S. 23:1031. "[T]he principal criteria for determining course of employment are time, place and employment activity." Mundy v. Dep't of Health and Human Res., 593 So.2d 346, 349 (La.1992). The inquiry also "focuses on the character or source of the risk which gives rise to the injury and on the relationship of the risk to the nature of the employment." Id. This is a fact determination for the WCJ.
The defendants rely on Mundy, which involved a nurse who was repeatedly stabbed in a hospital elevator. 593 So.2d at 348. The Louisiana Supreme Court held that her injuries did not arise out of her employment because the risk of her injury "was not greater for the plaintiff than for a person not so employed." Mundy, 593 So.2d at 350. Additionally, the Court held that the injuries were not sustained during the course of her employment because she had yet to begin working. Id.
Mundy is factually distinguishable. Using the Louisiana Supreme Court's reasoning, Mr. Lirette's injury arose out of his employment because a person not in the routine of loosening nuts by hitting bolts against a forklift has a decreased risk of sustaining his injury. Additionally, Mr. Lirette was working when his injury occurred. Mr. Lirette and two co-workers testified that it was customary to "tap" or "hit" the bolt against the forklift when trying to loosen the nut to remove it from the bolt.
Although Mr. Lirette testified that he hit the bolt harder against the forklift after the verbal altercation, this recklessness does not defeat the requirements of La. R.S. 23:1031. Creel v. Concordia Elec. Coop., Inc., 93-1329 (La.App. 3 Cir. 5/4/94), 640 So.2d 507, 509. The court, in Creel, opined that "[o]ccasional lapses are a predictable vice of human nature." Id. Accordingly, we do not find that the WCJ committed manifest error in finding that Mr. Lirette's injury arose out of and during the scope of Mr. Lirette's employment.

DECREE
Considering the above, we affirm the judgment of the Workers' Compensation Court.
AFFIRMED.