# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-1123

MARY ORTEGA

VERSUS

CANTU SERVICES, INC., ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 14-04296
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

**CANDYCE G. PERRET**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, Van H. Kyzar, and Candyce G. Perret, Judges.

**MOTION TO STRIKE GRANTED; JUDGMENT AFFIRMED.**

George Arthur Flournoy
Flournoy, Doggett & Losavio
P. O. Box 1270
Alexandria, LA 71309-1270
(318) 487-9858
COUNSEL FOR CLAIMANT/APPELLANT:
    Mary Ortega

**Gregory John Laborde**
**Daigle Rayburn, LLC**
**P. O. Box 3667**
**Lafayette, LA 70502**
**(337) 234-7000**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Liberty Mutual Insurance Company**
    **Cantu Services, Inc.**

**PERRET, Judge.**

Mary Ortega appeals the judgment of the Office of Workers' Compensation denying her Motion to Enforce Settlement and for penalties and attorney fees after concluding the settlement was conditioned on CMS approval of a Medicare Set-Aside Agreement.

## FACTS AND PROCEDURAL HISTORY

This workers' compensation case arises out of a work injury that Claimant-Appellant, Mary Ortega ("Ms. Ortega"), sustained while she was employed by Cantu Services, Inc. ("Cantu"). Ms. Ortega filed a Disputed Claim for Compensation on June 27, 2014. The parties reached a settlement agreement in 2016, which was judicially approved and recited in open court on September 1, 2016. The agreement was explained on the record by counsel for Cantu and its insurer, Liberty Mutual Insurance Company, as follows:

> Mr. Laborde: Your Honor, we've agreed to compromise all claims asserted by Ms. Ortega in each docket number for the total sum of $120,000.
> We will file with CMS [Centers for Medicare and Medicaid Services] approval for a Medicare set-aside agreement [MSA] in the amount of $56,049. The balance that would then be paid in benefits is $63,951.
> Now, the proviso is if CMS does not approve the requested amount, but alters it in any way, we will fund the MSA as directed by CMS and then adjust the amount to be paid in benefits accordingly, so that the total of the settlement still amounts to $120,000. And we will continue to pay benefits until we get the CMS approval and the funds tendered to claimant.
>
> Mr. Flournoy [counsel for Ms. Ortega]: . . . . Yeah, that's right.
>
> Judge Braddock: And you understand the nature of this compromise, Ms. Ortega?
>
> . . . .
>
> Ms. Ortega: Yes, sir.

Judge Braddock then approved the compromise and stayed the docket numbers until he heard from the parties in the future, after CMS approved the MSA, to then close out the cases.

On December 22, 2016, Ms. Ortega filed a Motion and Order to Amend 1008, adding penalties and attorney fees under La.R.S. 23:1201(F) and/or 1201(G) for Appellees' failure to pay the settlement within thirty days after the recitation of the agreement in open court. Ms. Ortega also filed a Motion to Enforce Settlement and for penalties and attorney fees, which was heard on June 1, 2017. The court considered the minutes from the September 1, 2016 hearing,[1] the testimony of Ms. Ortega that she was present at the September hearing and understood the settlement was conditioned on CMS approval, and argument of counsel. The court, relying on *Harrelson v. Arcadia*, 10-1647 (La.App. 1 Cir. 6/10/11), 68 So.3d 663, *writ denied*, 11-1531 (La. 10/7/11), 71 So.3d 316, concluded the settlement was conditioned on CMS approval of an MSA and accordingly denied Ms. Ortega's Motion to Enforce Settlement and for penalties and attorney fees. Ms. Ortega filed a "Motion and Order for New Trial for Reargument Only" and, after a hearing was held on August 21, 2017, this was also denied.

Ms. Ortega now appeals and asserts two assignments of error: (1) that the workers' compensation judge ("WCJ") erred in finding the settlement of $120,000.00 did not need to be paid within thirty days of the judicial approval of the settlement agreement and therefore denying La.R.S. 23:1201(G) sanctions, and (2) that the WCJ erred in finding CMS approval was a suspensive condition that must be fulfilled before paying Ms. Ortega the $120,000.00 settlement.

---

[1] At the time of the Motion to Enforce Settlement hearing, the parties and court only had the minutes of the September 1, 2016 hearing because there was an issue getting the transcript from the court reporter. However, a copy of the transcript was obtained and is contained in this record on appeal. The transcript was prepared by and considered by the workers' compensation judge at the hearing on Ms. Ortega's Motion and Order for New Trial.

Additionally, on appeal and in response to Appellees' opposition brief, Ms. Ortega filed a Motion to Strike with this Court, requesting that two portions of Appellees' brief be stricken for lack of support in the record. This motion was referred to the merits in this case. For the following reasons, we grant Ms. Ortega's Motion to Strike, but affirm the WCJ's judgment.

## MOTION TO STRIKE

Ms. Ortega requests we strike two portions of Appellees' brief for lack of support in the appellate record. Specifically, on page two of Appellees' brief:

> Appellees submitted a request to the Center for Medicare Services for approval of the negotiated Medicare Set Aside Agreement, submitting the appropriate medical records and information. However, the request for approval was denied by CMS. Appellant was informed of the denial and provided with the reasons for denial and informed of what additional information was needed from Appellant and Appellees in order to address the concerns of CMS regarding the sufficiency of the Medicare Set Aside Agreement. To date, Appellant has not furnished to Appellees any of the requested information.

Also, Ms. Ortega moves to strike a portion of Appellees' brief on page 5:

> Appellant has been advised of the reasons for the denial of the Medicare Set Aside Agreement and has yet to furnish to Appellees any of the information needed in order to respond to the objections of CMS.

This court must render judgment upon the record that is on appeal. La.Code Civ.P. art. 2164. "This court has no authority to consider on appeal facts referred to in appellate briefs if those facts are not in the record on appeal." *In re Succession of Badeaux*, 08-1085, pp. 5-6 (La.App. 1 Cir. 3/27/09), 12 So.3d 348, 352, *writ denied*, 09-822 (La. 5/29/09), 9 So.3d 166.

A review of Appellees' brief shows that counsel refers to actions he took in contacting CMS for approval of the MSA funding, the CMS denial and request for

3

additional information, and Appellant's failure to furnish that information to Appellees. Although this argument by Appellees' counsel is found in his pre-trial statement to the WCJ, as well as in argument to the WCJ, when counsel asked the court to recognize his pre-trial statement as an officer of the court under oath, his request was never addressed or responded to by the court. Therefore, because was no evidence submitted with counsel's statement and his statement was not admitted as fact, counsel's statements are mere argument and not evidence. Argument by counsel "is not evidence and cannot be considered as proof of fact." *Taiae v. City of Baton Rouge*, 00-915, p. 4 (La.App. 1 Cir. 6/22/01), 808 So.2d 677, 680, n. 3; *see also Maxie v. McCormick*, 95-1105 (La.App. 1 Cir. 2/23/96), 669 So.2d 562, *Harrison v. La. State Univ. Med. Ctr.*, 623 So.2d 707 (La.App. 4 Cir. 1993).

Accordingly, we grant Ms. Ortega's Motion to Strike.

## STANDARD OF REVIEW

The first circuit in *Harrelson*, 68 So.3d at 665-66, set forth the standard of review for a factually similar case:

> In workers' compensation cases, our standard of review to be applied to findings of fact is the manifest error-clearly wrong standard. *Dean v. Southmark Construction,* 03–1051 (La.7/6/04), 879 So.2d 112, 117. However, when legal error interdicts the fact-finding process in a workers' compensation proceeding, the *de novo* standard of review applies. *Brantley v. Delta Ridge Implement, Inc.,* 41,190 (La.App.2d Cir.6/28/06), 935 So.2d 308, 314. We also use the *de novo* standard of review for determining if the WCJ was legally correct when interpreting statutes pertaining to workers' compensation, because the interpretation of a statute is a question of law. *Lirette v. Patterson Services, Inc.,* 05–2654 (La.App. 1st Cir.11/17/06), 951 So.2d 223, 226. This case involves the interpretation of a statute and the determination of whether that statute was violated; thus, we review *de novo* the WCJ's statutory interpretation, while using the manifest error standard of review for the WCJ's factual findings regarding any statutory violation.

4

## DISCUSSION OF APPEAL

Ms. Ortega's first assignment of error depends on the outcome of the second assignment of error, namely, whether the CMS approval of the MSA funding was a condition that suspended the payment of $120,000.00 to Ms. Ortega. The WCJ held that CMS approval was a suspensive condition. We agree and find no manifest or legal error with this finding.

Louisiana Revised Statutes 23:1201(G) (emphasis added) provides for penalties and attorney fees in workers' compensation cases as follows:

> If any award payable under the terms of a final, nonappealable judgment is not paid within thirty days after it becomes due, there shall be added to such award an amount equal to twenty-four percent thereof or one hundred dollars per day together with reasonable attorney fees, for each calendar day after thirty days it remains unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such award, **unless such nonpayment results from conditions over which the employer had no control**. No amount paid as a penalty under this Subsection shall be included in any formula utilized to establish premium rates for workers' compensation insurance. The total one hundred dollar per calendar day penalty provided for in this Subsection shall not exceed three thousand dollars in the aggregate.

A final, nonappealable judgment includes a workers' compensation settlement agreement, and triggers La.R.S. 23:1201(G) upon court approval and entry into judgment. *Williamson v. Liberty Mut. Ins. Co.*, 12-148 (La.App. 3 Cir. 6/6/12), 92 So.3d 1218.

However, obligations may be suspended by a suspensive condition which prevents enforcement of the obligation until an uncertain event occurs. La.Civ.Code art. 1767. "Conditions may be either expressed in a stipulation or implied by the law, the nature of the contract, or the intent of the parties." La.Civ.Code art. 1768. When the suspensive condition "depends solely on the

5

whim of the obligor[,]" the obligation is null. La.Civ.Code art. 1770. The first circuit in *Harrelson*, 68 So.3d 663, found that a settlement agreement requiring CMS approval of funding for an MSA was a suspensive condition that suspended the obligation to fund the MSA account until CMS approval was received. The WCJ in this case correctly recognized that this case is factually like *Harrelson*.

In *Harrelson*, the employer agreed to pay the claimant "$125,000.00, with $42,010.00 of that amount to be placed in a MSA account to cover future medical expenses and $82,990.00 to be paid in one lump sum." *Id*. at 664. The agreement further contained a clause stating:

> [Bestaff] and insurer agree that, *if CMS . . . requires that additional money be placed into the [MSA] in this case,* [Bestaff]/insurer *will, at its option, pay all such additional amounts* and comply with all Medicare requirements regarding such, *or will withdraw the proposal for a [MSA],* and the claim for future medical care will remain open.

*Id*. (Emphasis and alterations in original). The agreement was judicially approved on December 10, 2009. The employer immediately paid the claimant $82,990.00 and withheld the remaining amount for the MSA funding while awaiting CMS approval. CMS ultimately approved the amount on January 27, 2010, and the employer issued a check for the balance of the funds on February 2, 2010, within thirty days of CMS's approval, but over thirty days from the date of judicial approval of the agreement. The claimant then filed a motion to enforce settlement judgment seeking penalties and attorney fees pursuant to La.R.S. 23:1201(G) for the employer's failure to pay the entirety of the settlement agreement within thirty days of the judgment. On appeal, the first circuit affirmed the WCJ, agreeing that "[t]he approval by CMS was an uncertain event that once it occurred made the WCJ's order approving the entire settlement agreement final and enforceable." *Id*.

6

at 666. "Additionally, we find that the timing of this uncertain event—CMS approval—was completely out of [the employer's] control since the payment of the MSA funds was entirely dependent upon whether CMS approved the funding." *Id.*

As in *Harrelson*, the agreement between the parties in this case was that CMS needed to approve the funding of the MSA. The difference between this case and *Harrelson*, is that in *Harrelson*, $82,990.00 was to be paid in one lump sum regardless of the outcome of the CMS approval. In *Harrelson*, if CMS did not approve of the MSA funding, the employer had two options—to pay the additional amount requested by CMS or withdraw the proposal for a MSA. However, in the case before this Court, the calculation of the amount to be paid to Ms. Ortega in benefits is entirely dependent on the amount required to fund the MSA. The judicially approved agreement as evidenced by the court transcript was that:

> Now, the proviso is if CMS does not approve the requested amount, but alters it in any way, we will fund the MSA as directed by CMS and then adjust the amount to be paid in benefits accordingly, so that the total of the settlement still amounts to $120,000.

Additionally, Exhibit P-2, submitted by Ms. Ortega and which is the affidavit of her counsel, states:

> Furthermore, it was agreed that post-settlement documents would be prepared by defense counsel with the understanding that whatever amount for medical expenses was approved by CMS would be designated in the settlement documents as a full and final compromise of all claims for medical expenses and the remainder of the $120,000.00 settlement fund would be attributed to a full and final settlement of all claims for indemnity benefits, penalties and attorney fees.

Finally, the settlement documents signed by Ms. Ortega specify that Appellees would write two checks, one to Ms. Ortega, and one to the Mary Ortega MSA Account. Appellees could not possibly write these two checks without knowing

the amount CMS approved to fund the MSA account. Therefore, we agree with the WCJ that the need for CMS's approval of the MSA funding was a suspensive condition.

The next question is whether the suspensive condition depends on the whim of the employer, making the obligation null according to La.Civ.Code art. 1770, or whether the employer had no control over CMS approving the MSA funding.

Ms. Ortega argues that the suspensive condition depends on the whim of the employer to file the request with CMS. This issue was also raised in *Harrelson*, however, in that case, the court received evidence that the request was in fact made to CMS, and therefore Appellees could not do anything more without the CMS approval. Ms. Ortega, on the other hand, asserts Appellees have not sought CMS approval and that there was no requirement in the settlement that Appellees do so within a certain timeframe. Therefore, under the WCJ ruling, Appellees can continue not funding the settlement because they were not required to obtain CMS approval by any specific date.

Ms. Ortega correctly stated that there is no evidence in the record that Appellees have sought CMS approval. The only contrary argument is just that, merely argument and not proof of fact. *Taiae*, 808 So.2d 677; *Maxie*, 669 So.2d 562; *Harrison*, 623 So.2d 707. However, regardless of when Appellees apply for CMS approval, that approval will ultimately be beyond Appellees' control. Therefore, the WCJ did not err in concluding that Appellees were not required to pay Ms. Ortega the settlement funds prior to CMS approval of the MSA funding. Additionally, because we conclude nonpayment was the result of conditions over which the employer had no control, the WCJ did not err in denying statutory penalties and attorney fees, in this case, for Appellees' failure to pay the funds

8

within thirty days of the final and nonappealable judgment. Costs of this appeal are assessed to Appellant, Mary Ortega.

**MOTION TO STRIKE GRANTED; JUDGMENT AFFIRMED.**