# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT
### 19-202


MARY ORTEGA

    **Plaintiff-Appellant**


VERSUS


CANTU SERVICES, INC. AND

LIBERTY MUTUAL INSURANCE CO.

    **Defendants-Appellees**


**\*\*\*\*\*\*\*\*\***


ON APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION
DISTRICT 2
DOCKET NO. 18-01006
RAPIDES PARISH
JAMES BRADOCK, WORKERS' COMPENSATION JUDGE


**\*\*\*\*\*\*\*\*\***


**JONATHAN W. PERRY**
**JUDGE**


**\*\*\*\*\*\*\*\*\***


Court composed of John D. Saunders, Phyllis M. Keaty, and Jonathan W. Perry, Judges.


**REVERSED, IN PART, AND AFFIRMED AS AMENDED.**

**George A. Flournoy**
**Flournoy Law Firm**
**1239 Jackson Street**
**Alexandria, Louisiana 71301**
**Phone (318) 487-9858**
**Counsel for Appellant:**
     **Mary Ortega**

**Gregory J. Laborde**
**Daigle Rayburn LLC**
**303 W. Vermilion, Suite 210**
**P. O. Box 3667**
**Lafayette, Louisiana 70502**
**Phone (337) 234-7000**
**Counsel for Appellees:**
     **Cantu Services, Inc. and**
     **Liberty Mutual Insurance Co.**

**PERRY, Judge.**

In this workers' compensation case, Mary Ortega ("Ortega") appeals the judgments of the Office of Workers' Compensation, denying her motion to enforce a settlement agreement, the denial of her request that she be found permanently and totally disabled, the attendant issues of the adequacy of the penalties, attorney fees, and the assessment of costs. We reverse in part and affirm as amended.

## FACTS AND PROCEDURAL HISTORY

Ortega, an employee of Cantu Services, Inc. ("Cantu"), was injured on the job at Fort Polk on February 23, 2011. At the time of the accident, Ortega was pulling mermites[1] to heat and then take to the soldiers in the field. As she was pulling the mermites, she fell backwards striking her neck and back on a crate; as a result of her fall, she injured her right arm, and experienced low-back and neck pain. After being treated at the Natchitoches Hospital, Ortega was seen by Dr. Robert K. Rush ("Dr. Rush"), an injury management specialist, who treated her conservatively with medication and physical therapy. She also received like conservative treatment from Dr. George R. Williams ("Dr. Williams"), an orthopaedic surgeon in Opelousas, even though at one point he recommended a two-level anterior cervical fusion. Eventually, Dr. Rush referred her to Dr. J. David Delapp ("Dr. Delapp") who performed rotator cuff surgery on Ortega's right shoulder. Liberty Mutual Insurance Company ("Liberty Mutual"), Cantu's workmen's compensation carrier, approved all of Ortega's medical treatment, and began paying an appropriate sum of weekly workers' compensation benefits to Ortega.[2]

On March 11, 2013, Ortega was involved in a motor vehicle accident unrelated to her employment. She consulted Dr. Clark A. Gunderson ("Dr.

---

[1] In the military, mermites are insulated containers used to keep hot food warm in the field.

[2] Although it was never awarded by a court, Liberty Mutual voluntarily paid Ortega temporary total disability benefits.

Gunderson"), an orthopaedic surgeon, for injuries she sustained in the accident, which included her claim that the accident exacerbated her work-related injuries. Dr. Gunderson performed various diagnostic tests and determined that Ortega needed surgery to correct problems she was having in her neck. On September 9, 2013, Dr. Gunderson successfully performed a two-level anterior cervical discectomy and fusion at C3-4 and C4-5.[3]

On June 27, 2014, Ortega filed a Disputed Claim for Workers' Compensation against Cantu and Liberty Mutual ("Defendants"). In 2016, Ortega and Defendants reached a settlement which was judicially approved and recited in open court on September 1, 2016. In *Ortega v. Cantu Services, Inc.,* 17-1123, p. 1 (La.App. 3 Cir. 5/2/18), 246 So.3d 827, 828-29,[4] we referenced and recited the settlement:

> The agreement was explained on the record by counsel for Cantu and its insurer, Liberty Mutual Insurance Company, as follows:
>
> Mr. Laborde: Your Honor, we've agreed to compromise all claims asserted by Ms. Ortega in each docket number for the total sum of $120,000.

---

[3] Based upon answers to interrogatories, it appears Ortega settled her third-party claim for this rear-end accident on September 17, 2015, against Terry Weaver, Phillips Distributing, LLC, and Progressive Gulf Insurance Company, Hanover Insurance Group and/or Allmerica Financial Benefit Insurance Company.

[4] In that opinion we upheld the WCJ's decision to deny Ortega's Motion to Enforce Settlement and for penalties and attorney fees after concluding the settlement was conditioned on CMS approval of a Medicare Set-Aside Agreement. We also struck the following language in Cantu's brief:

> Appellees [Cantu] submitted a request to the Center for Medicare Services for approval of the negotiated Medicare Set Aside Agreement, submitting the appropriate medical records and information. However, the request for approval was denied by CMS. Appellant [Ortega] was informed of the denial and provided with the reasons for denial and informed of what additional information was needed from Appellant and Appellees in order to address the concerns of CMS regarding the sufficiency of the Medicare Set Aside Agreement. To date, Appellant has not furnished to Appellees any of the requested information.
> . . .
> Appellant has been advised of the reasons for the denial of the Medicare Set Aside Agreement and has yet to furnish to Appellees any of the information needed in order to respond to the objections of CMS.

*Ortega* at 829–30.

We will file with CMS [Centers for Medicare and Medicaid Services] approval for a Medicare set-aside agreement [MSA] in the amount of $56,049. The balance that would then be paid in benefits is $63,951.

Now, the proviso is if CMS does not approve the requested amount, but alters it in any way, we will fund the MSA as directed by CMS and then adjust the amount to be paid in benefits accordingly, so that the total of the settlement still amounts to $120,000. And we will continue to pay benefits until we get the CMS approval and the funds tendered to claimant.

Mr. Flournoy [counsel for Ms. Ortega]: .... Yeah, that's right.

Judge Braddock: And you understand the nature of this compromise, Ms. Ortega?

. . . .

Ms. Ortega: Yes, sir.

In accordance with that workers' compensation settlement agreement, Defendants continued weekly temporary total disability benefits until January 25, 2018. Subsequent to the discontinuation of weekly benefits, Ortega filed a Disputed Claim for Compensation on February 16, 2018, for Defendants' non-payment of temporary total disability benefits and medical benefits, and further sought penalties, attorney fees, interest, and court costs. Thereafter, on September 5, 2018, Ortega also filed a Motion to Enforce Settlement of 2016, in which she sought to have Defendants resume payment of the weekly indemnity benefits, effective January 25, 2018, and to continue those indemnity benefits until Defendants obtain CMS approval of a MSA.

After conducting a hearing on October 8, 2018, the Workers' Compensation Judge ("WCJ") denied Ortega's Motion to Enforce Settlement. A judgment to that effect was signed on October 15, 2018. On October 24, 2018, Ortega filed a motion for new trial on the denial of the motion to enforce settlement. On November 26, 2018, the WCJ denied Ortega's motion for new trial.

A hearing with witnesses was held on October 18, 2018, on the issues Ortega raised in her Disputed Claim for Compensation. After taking the matter under advisement, the WCJ (1) denied Ortega's claim for permanent total disability

benefits; (2) found Ortega's claims for medical benefits prescribed;[5] (3) found Ortega entitled to reinstatement of indemnity benefits as supplemental earnings ("SEB") based on a zero earning capacity from January 25, 2018 and continuing in accord with La.R.S. 23:1221(3);[6] (4) cast Defendants with a $4,000.00 penalty for discontinuance of indemnity benefits; (5) awarded Ortega a penalty of $2,000.00 for the failure of Defendants to timely reinstate indemnity benefits;[7] (6) awarded Ortega an attorney fee of $7,500.00; (7) ordered Ortega to submit 1020 forms to Defendants in accord with La.R.S. 23:1221(3)(f); (8) assessed costs of $66.00 to Defendants and rejected Ortega's claims for all other court costs; and (9) awarded legal interest on the award of SEBs from the date payment is due until paid and that interest on all other monetary awards bear interest from the date of judgment until paid.

Ortega timely filed a devolutive appeal contending that the WCJ erred: (1) in refusing to enforce the judicially approved settlement and requiring Defendants to continue weekly indemnity benefits until CMS had approved a MSA and had forwarded the settlement funds to Ortega; (2) should this court not find merit to her first argument, she alternatively argues that the WCJ erred in denying her permanent and total disability status; (3) in awarding a penalty of only $4,000.00 for the termination of Ortega's weekly indemnity benefits; (4) in awarding an attorney fee of only $7,500.00; and (5) not assessing all reasonable costs to Defendants.

### SETTLEMENT ENFORCEMENT

In her first assignment of error, Ortega contends that the WCJ erred when it failed to enforce the 2016 settlement. She argues that although this court rejected

---

[5] The issue of whether her claim for medical benefits was prescribed has not been assigned as error and has not been argued in brief before this court.

[6] Ortega has not assigned as error or argued in brief that the WCJ erred in awarding her SEB rather than temporary total disability benefits.

[7] Ortega has not assigned as error or argued in brief that the WCJ erred in awarding a $2,000.00 penalty for failing to timely reinstate indemnity benefits.

4

her earlier attempt to enforce the settlement, her current action sought to enforce the second part of the settlement, namely, Defendants' agreement to continue weekly benefits until CMS approval of a MSA had been obtained and the settlement funds were tendered to Ortega.

Defendants, relying on this court's earlier opinion in *Ortega,* 246 So.3d 827, argue that there was no settlement to enforce. Accordingly, they contend that when that decision became final, the law of the case doctrine should apply because Ortega offered no new evidence to upset that prior decision.

In *Arceneaux v. Amstar Corp.*, 10-2329, p. 14 (La. 7/1/11), 66 So.3d 438, 448, the supreme court stated:

> The law of the case refers to a policy by which the court will not reconsider prior rulings in the same case. *Day v. Campbell–Grosjean Roofing & Sheet Metal Corp.,* 260 La. 325, 256 So.2d 105 (1971).
>
> > The law of the case principle relates to (a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate rulings at trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal. Among reasons assigned for application of the policy are: the avoidance of indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency, and the essential fairness to both sides, of affording a single opportunity for the argument and decision of the matter at issue.
>
> *Petition of Sewerage and Water Bd. of New Orleans,* 278 So.2d 81, 84 (La.1973).
>
> However, even when applicable, the law of the case is discretionary and should not be applied in cases of palpable error or where application would result in injustice. *Id.*

Ortega rightly points out that the settlement consisted of two parts. The first part comprised of a total settlement amount of $120,000.00 after CSA approved a MSA. The second part involved Defendants' agreement to "continue to pay benefits until we get the CMS approval and the funds tendered to claimant."

5

It is likewise clear that our earlier opinion only addressed Ortega's attempt to force Defendants to pay the settlement funds. In our rejection of that action, we made two critical pronouncements. First, we held that the settlement agreement was subject to a suspensive condition, namely that CMS's approval of the MSA funding was a condition that had to be met before Defendants were required to pay the settlement funds. Secondly, we held that because "nonpayment was the result of conditions over which the employer had no control, the WCJ did not err in denying statutory penalties and attorney fees. . . for Appellees' failure to pay the funds[.]" *Ortega*, 246 So.3d at 833. Ortega has not presented any new evidence to the WCJ nor advanced any argument to cause us to reconsider this aspect of our prior ruling in this case. To this extent, the law of the case doctrine is applicable.

Before we address Ortega's contention regarding the second element of the settlement agreement, we find it important to first review the law as it pertains to compromise agreements and then more closely examine this particular settlement agreement.

Louisiana Civil Code Article 3071 provides as follows, "[a] compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." Thus, [La.Civ.Code art.] 3071 requires the presence of two elements for a valid compromise: "(1) mutual intention of preventing or putting an end to the litigation, and (2) reciprocal concessions of the parties to adjust their differences." *Trahan v. Coca Cola Bottling Co. United, Inc.*, 04–100, p. 10 (La. 3/2/05), 894 So.2d 1096, 1104. Moreover, it is well established that a compromise instrument is the law between the parties and must be interpreted according to their true intent. *Barnett v. Louisiana Med. Mut. Ins. Co.*, 51,908 (La.App. 2 Cir. 5/23/18), 248 So.3d 594, *writ denied*, 18-944 (La. 9/28/18), 253 So.3d 154. "A compromise settles only those differences that the parties clearly intended to settle, including the necessary

consequences of what they express." La.Civ.Code art. 3076. Accordingly, "[w]hen the words of the settlement agreement are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046.

As to Defendants' further agreement to continue weekly benefits until CMS approval of a MSA had been obtained and the settlement funds were tendered to Ortega, the second element of the settlement—one not addressed in our earlier opinion—we find Ortega's argument meritorious. We observe that though Defendants agreed to continue payment of weekly benefits, they did so only until January 24, 2018, when they unilaterally chose to terminate payment. Although their obligation in this regard was always subject to termination once CMS approval of the MSA was obtained, a suspensive condition which has not yet been met, Defendants presented no evidence to warrant discontinuation of that obligation.

We find the WCJ erred as a matter of law when it chose not to enforce the second element of the settlement. Accordingly, we find Defendants are obligated to continue payment of temporary total disability benefits, and we need not address the WCJ's denial of Ortega's' claim for permanent and total disability benefits.[8]

### PENALTY AND ATTORNEY FEE AWARDS

Ortega next contends that the WCJ abused its discretion in assessing only a $4,000.00 penalty for the Defendants' discontinuance of indemnity benefits on January 24, 2018. Ortega argues that she was without indemnity benefits for more than a year and that she should have been awarded an $8,000.00 penalty, the maximum awardable under La.R.S. 23:1201. She further contends the $7,500.00 attorney fee the WCJ awarded was inadequate and should be increased to $15,000.00.

---

[8] On page 8 of Ortega's brief, she states, "It is respectfully suggested that, if this Court orders the enforcement of the second component part of the settlement agreement, the issue of T&P [total permanent] status becomes moot."

7

Whether an employer is arbitrary and capricious is a finding of fact reviewed under the manifest error standard of review; and the actual amount of the penalty award is not to be disturbed absent an abuse of discretion. *Turner v. Lexington House*, 14-1264 (La.App. 3 Cir. 4/15/15), 176 So.3d 1071, *writ denied*, 15-952 (La. 8/28/15), 176 So.3d 405.

Louisiana Revised Statutes 23:1201(F) provides for the assessment of penalties and attorney fees against an employer for failure to timely pay workers' compensation benefits. Penalties and attorney fees will not be assessed against an employer if the claim is reasonably controverted or nonpayment is due to circumstances beyond the employer's control. *Id*. To reasonably controvert a claim, an employer must be "engaged in a nonfrivolous legal dispute or [possess] factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." *Brown v. Texas–LA Cartage, Inc.*, 98–1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890. Further, any award of attorney fees must be reasonable. *Rapides Parish Waterworks Dist. No. 3 v. Broussard*, 95–361 (La.App. 3 Cir. 10/18/95), 663 So.2d 475, *writ denied*, 95–2777 (La. 1/26/96), 666 So.2d 679. Factors considered in determining whether an award is reasonable are the required skill, the complexity of the matter, and time expended on the case. *Id*.

Penalties are assessed under La.R.S. 23:1201(F) for an employer's failure to pay benefits as they become due. The record supports that Defendants voluntarily paid Ortega temporary total disability benefits and abruptly stopped those payments on January 24, 2018. In finding Defendants liable for penalties, the WCJ held Defendants had a duty to investigate Ortega's disability status before terminating payment and, relying on *Thibodaux v. Grand Isle Shipyard, Inc.*, 16-583 (La.App. 4 Cir. 12/21/16), 207 So.3d 459, rejected Defendants' assertion that its discontinuance of payments was justified because Ortega failed to submit the Employee's Monthly

Report of Earnings (LWC-WC 1020); as the WCJ noted, the Defendants had no indication Ortega was employed anywhere.

In this particular matter, we find no manifest error in the WCJ's award of penalties and attorney fees for failure to timely pay indemnity benefits. The record supports a finding that Defendants did not reasonably counter the medical and factual information presented in support of Ortega's claim for indemnity benefits. We now turn to the adequacy of the WCJ's awards.

Awards of penalties and attorney fees in workers' compensation cases are essentially penal and are imposed to deter indifference and undesirable conduct by employers and their insurers toward injured workers. *Williams v. Rush Masonry, Inc.*, 98-2271 (La. 6/29/99), 737 So.2d 41. Although the benefits of the Workers' Compensation Act are liberally construed, penal statutes are strictly construed. *Id.*

Ortega, relying on *Williamson v. Liberty Mutual Ins. Co.*, 12-148 (La.App. 3 Cir. 6/6/12), 92 So.3d 1218, a case with a similar background to the present case, urges us to find the WCJ abused its discretion when it failed to award a penalty of $8,000.00, the maximum awardable. In support of Ortega's contention, she asserts that Darlene Cook ("Cook"), the Liberty Mutual representative who terminated Ortega's temporary total benefits, was present at trial and yet was not called to testify. In rebuttal, Defendants contend the WCJ did not abuse its discretion because Ortega failed to introduce any evidence that the discontinuation caused her financial hardship and no adverse presumption can be drawn because Cook, who was equally available to Ortega as a witness, failed to testify.

In *Williamson*, this court awarded the $8,000.00 maximum penalty when the defendants terminated indemnity benefits three weeks and three days before the approval of a settlement agreement and did not pay those benefits until a year later. Finding the WCJ erred in only awarding a $3,000.00 penalty, we awarded the $8,000.00 maximum available by statute.

9

We agree with Ortega's assessment of the amount of penalty awarded. Defendants' decision to abruptly discontinue the payment of Ortega's benefits was not justifiable and that discontinuation of payment extended well into a year. Accordingly, we amend the WCJ judgment to raise the penalty to the amount of $8,000.00.

We now turn to Ortega's contention that the WCJ abused its discretion in awarding her an attorney fee of only $7,500.00. In support of her argument, counsel for Ortega references *Britton v. City of Natchitoches*, 97-1038 (La.App. 3 Cir. 2/11/98), 707 So.2d 142, *writ denied*, 98-1203 (La. 6/26/98), 719 So.2d 1057, a workers' compensation case in which he was awarded an attorney fee of $15,000.00.

"[A]ttorney's fee awards and penalty awards are not intended to 'compensate' a plaintiff and thereby make him whole, but rather to discourage certain behavior(s) on the part of the offending party. In this case, the discouraged behavior is employers', and employers' insurers', indifference toward injured employees." *Sharbono v. Steve Lang & Son Loggers*, 97-110, p. 10 (La. 7/1/97), 696 So.2d 1382, 1388, (quoting *Hood v. C.J. Rogers, Inc.*, 94–1162 (La.App.3 Cir. 3/8/95), 654 So.2d 371). It is equally clear "attorney's fee awards depend for their very existence upon a discretionary finding of the trier of fact[.]" *Id.*

In *McCarroll v. Airport Shuttle, Inc.*, 00–1123, p. 9 (La. 11/28/00), 773 So.2d 694, 700, the supreme court held:

> In our determination of the respective rights of the employee and the attorney to the statutory attorney fees, a persuasive factor is the methodology used to calculate the amount of the statutory attorney fees. The only limitation on the amount is the reasonableness of the fee awarded by the judge. *Cain [v. Employers Cas. Co.*, 236 La. 1085, 110 So.2d 108 (1959)]. The amount awarded rests within the discretion of the workers' compensation judge, as long as that amount is supported by the record. Some of the factors taken into account by the judge in fixing the amount of the fee are the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the employee, and the amount of time the attorney devoted to the case. H. Alston Johnson, III, [Louisiana Civil Law Treatise: Workers' Compensation Law and Practice] § 389 [(3rd ed.1994)].

From the outset, we find each case stands on its own facts and attorney fees are assessed accordingly. In the present case, the WCJ essentially found only limited merit to counsel's argument because it rejected Ortega's demand to enforce the settlement agreement and further found no merit to her claim for permanent and total disability. Having found merit to Ortega's legal argument on the enforcement of the settlement agreement and that the WCJ erred as a matter of law in this regard, we find an attorney fee award of $10,000.00 appropriate in the present case.

## COURT COSTS

Lastly, Ortega contends the WCJ erred when it cast Defendants with costs of only $66.00 and denied the assessment to them of all other costs.

Louisiana Revised Statutes 23:1317(B) provides:

> Costs may be awarded by the workers' compensation judge, in his discretion, and when so awarded the same may be allowed, taxed, and collected as in other civil proceedings. The fees of expert witnesses shall be reasonable and fixed in the original judgment. The judgment rendered shall have the same force and effect and may be satisfied as a judgment of a district court.

In its application of La.R.S. 23:1317(B), the jurisprudence has uniformly held that the allocation of court costs lies within the workers' compensation judge's discretion and can be reversed only upon a showing of an abuse of that discretion. *Harris v. City of Bastrop*, 49,534 (La.App. 2 Cir. 1/14/15), 161 So.3d 948; *Redler v. Giorlando's Rest. Corp.*, 07-658 (La.App. 5 Cir. 2/6/08), 979 So.2d 512, *writ denied*, 08-863 (La. 6/6/08), 983 So.2d 925; *Barber Bros. Contracting Co., L.L.C. v. Morgan,* 02-1712 (La.App. 1 Cir. 5/9/03), 849 So.2d 563.

Notwithstanding the provisions of La.R.S. 23:1317(B) and the jurisprudence, Ortega, relying on La.R.S. 13:4533, contends various costs enumerated therein **shall** be taxed as costs. Louisiana Revised Statutes 13:4533, provides: "The costs of the clerk, sheriff, witness' fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs."

11

Commenting on the interplay of La.R.S. 13:4533 in the workers' compensation setting, the court in *Smith v. Two R Drilling Co.*, 606 So.2d 804, 816 (La.App. 4 Cir.), *writ denied*, 607 So.2d 560 (La.1992), stated:

R.S.13:4533 merely defines what is meant by the term "costs". It does not discuss who is entitled to costs and under what circumstances.

C.C.P. Art. 1920 provides:

Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.

Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.

Thus, under general civil law, the question of awarding costs is discretionary with the trial judge, except as otherwise provided by law. Accordingly, we will specifically examine the Worker's Compensation law.

LSA–R.S. 23:1317 B as amended by Acts 1983, 1st Ex.Session, No. 1 § 1, effective July 1, 1983 provided [in part] as follows:

Costs may be awarded by the court, in its discretion, and when so awarded the same may be allowed, taxed, and collected as in other civil proceedings ...

LSA–R.S. 23:1320 added by Acts 1983, 1st Ex.Sess., No. 1 § 1, effective July 1, 1983 provides:

If the court, before which any proceedings for compensation or concerning an award for compensation have been brought, determines that the proceedings have not been brought upon reasonable grounds, it shall assess the whole cost of the proceedings against the party who has brought the proceedings.

In each of the statutes examined thus far, the question of awarding costs lies within the sound discretion of the hearing officer or of the court. Thus[,] under both the general civil provisions and the specific Worker's Compensation statutes, grants of costs are discretionary with the court or hearing officer.

Based upon the foregoing, we find no merit to Ortega's argument that the costs outlined in La.R.S. 13:4533 **shall** have been assessed to Defendants.

However, in its oral reasons for judgment, it is clear the WCJ based its award of court costs on its rejection of Ortega's claim for permanent and total disability

12

benefits and the rejection of her claim to enforce the settlement agreement.  If the WCJ had found merit to Ortega's claim to enforce the second element of the settlement, such a determination would have made a resolution of her alternative claim for permanent and total disability benefits unnecessary.  Accordingly, we find the WCJ abused its discretion in its assessment of costs.  Therefore, we assess all costs of the trial and appeal to Defendants.

## DISPOSITION

For the reasons set forth in this opinion, the judgment of the Office of Workers' Compensation is reversed in so far as it failed to enforce the second element of the settlement agreement entered into between Ortega and the Defendants. Thus, we find Cantu Services, Inc. and Liberty Mutual Insurance Co. liable for the payment of temporary total disability benefits.  We further amend the judgment to increase penalties from $4,000.00 to $8,000.00 for the improper termination of Ortega's indemnity benefits and increase the attorney fee award to $15,000.00.  Costs of the trial court and this appeal are assessed to Cantu Services, Inc. and Liberty Mutual Insurance Co.

**REVERSED, IN PART; AND AFFIRMED AS AMENDED.**